Case No. 14-7126. Seed Company Limited et al. appellants v. Angie Westerman as the personal representative of the estate of William F. Westerman et al. Mr. Mickeljohn for the appellants. Mr. Robinson for Westerman Appellees et al. and Mr. Gloss for Kratz Appellees et al. Mr. Gloss. Mr. Gloss. Good morning. Good morning, Your Honor. May it please the Court, the decision below with respect to duty of care and judgmental immunity is wrong for three independent reasons and thus should be reversed. First, there was the Biomet case requires that there be three elements proven by the defendant who's asserting this defense. The first element is that there is a judgment made. The second element is that it's an informed judgment. And third, it's got to be a reasonable judgment. The essence of the case is that if our client, Seed, had proven entitlement to the filing date of the PCT application, it would have won the interference. It's called a priority determination. It didn't win that filing date and therefore lost the interference. So the question is what was the malpractice? The malpractice was failure to follow the interference rules. Interference rule was 37 CFR section 1.637 and 1.647. Now 637 says you have to file a certified translation of the earlier filed application you're trying to get the benefit of if it's in a foreign language. Why certified? The board has to know it's correct and so does your opponent because they both want to review that translation to see if the invention that's in the later filed application is disclosed in the earlier filed application. The defendants below failed to do that. They didn't file the certified translation. They didn't comply with 1.637 and therefore the board held against them both originally and on reconsideration and so did the Federal Circuit originally and on reconsideration. So the question is was there a judgment made or not? Well the attorneys now in their briefs before this court say yeah there was a judgment because we thought that the PCT application was not an earlier filed application. Now remember 637 says three times if you have an earlier filed application in a foreign language you have to file a translation. So they're saying it's not an earlier filed translation and if you look at the Westerman brief on page 20 to 23 there's two sections in the brief which say exactly that. PCT is not an earlier filed translation. On page 20 it's in the heading itself and later on down in the page it says the same thing. But look at the actual evidence as opposed to attorney argument. The evidence is what did the defendants below say when they filed the motion to get the benefit of the filing date of the PCT application? What they said and that's at 951 and 952 of the record. They called it a motion to be accorded the benefit of the filing date of earlier filed applications. There was a Japanese application then there was a PCT application which was also in Japanese. So the title says applications. That means both. They're designating these things as earlier filed applications which means that 637 has to be followed. And if there's any doubt about it in the text where they're talking about the PCT application they say the party to my, let's see, also moves to be accorded the benefits of the filing date of the earlier filed PCT application. So what they said in 97 was the PCT application was an earlier filed application. What they say in their brief, question and brief at 20 to 23 is that it wasn't. And the reason they have to say that is because if it was an earlier filed application then they had to comply with 637 and they didn't. So there was no judgment here. It was a mistake. It was simply a failure to put in what they had put in and the board and the Federal Circuit ruled against them for that purpose. The only other evidence in the record about this is the declaration of Ray Lupo. He's an expert for SEED and he talks about the standard of care in a malpractice case. His declaration is in 1364 to 1407 of the record. It's fairly detailed. But what Mr. Lupo says is what the standard is. Someone practicing in an interference, and by the way, that's a very complicated area of the law, very complicated proceedings. Someone practicing in that area has to first of all know the rules. They have to read the rules. Secondly, they have to apply the rules. If 637 says you need certified translations of earlier filed applications, you have to file such translations. And he also talks about breach at Section 12. I guess both sides would agree on this, but it seems brutal that the failure to file a certified translation balances your rights, but that's neither here nor there. It seems brutal in the sense that any... But your point is that because it's brutal, they should have known. Yeah, there's a lot of rules that are sort of brutal. Yeah, we have a few. Limitations is brutal and discovery, termination is sometimes brutal, a lot of stuff like that. But what's important is not that it's just some rule that was made up and has no importance. It has a lot of importance. You have to file that translation, and it's got to be certified, so you have to know it's accurate, so that both the opposing party, Stevens in this case, and the board can see in that translation if the invention of the later filed application is disclosed in the first file. Now, if you were correct on all this, our proper approach here would be to send... We have to get the statute of limitations, but the proper approach on this point would be to send it back for trial. I don't think so, Your Honor. I mean, I think... You're going for the whole thing. I think so, Your Honor, because the whole issue is whether they thought it was not an earlier filed application at the time, whether the defendants thought it was not an earlier filed application. And I don't see how you can get, how a reasonable jury could decide when they're calling it an earlier filed application twice, how that reasonable jury could say, oh, they made a mistake. Now, if there was a declaration in the case, in our case, that said, gee, we said that at the time, but we made a mistake. We didn't mean to say it was an earlier filed application. We meant to say it's a PCT application, and for that reason, you don't have to file a certified translation. They didn't do that. No declaration, and they should be stuck by their words, I think. Do you want to deal with the statute of limitations now? Get a little more on this. There's two other issues. Okay. Your Honor. Go ahead. So, Biomet also requires that there be an informed judgment. That is, in the Finnegan-Henderson case, Finnegan-Henderson did a lot of research. They had drafts. Sometimes they went one option, sometimes another option. They clearly made a judgment, and it was clearly informed. In this case, there's nothing to indicate that it was informed. They didn't take the two options and study them and have legal research and say research on why I have to file a translation or why I don't have to file the declaration. There's no letter to the client saying here's the two options, here's the one we want to pick. Nothing like that. They bear the burden on this affirmative defense, and there's no evidence on it, and for that reason, also, independently, I think the decision should be reversed. And finally, the reasonableness of the decision. All cases in this court talk about attorneys' judgment having to be reasonable, and this was not a reasonable decision. There's two ways to go, file the translation or don't file the translation. If you file the translation, there's no risk at all to the client. You've complied with the interference rules, which you should have complied with. You've complied with this other PCT rules that they're sort of making up now in their briefing. No risk. But if you don't file the certified translation, you're okay so long as these PCT rules that are newly invented are relied upon by the board. But if the board says you should have filed a certified translation of an earlier filed application and you didn't, then it's risk to the client. So the decision was not a reasonable one. Just say a couple words about the Stevens against DeMai Federal Circuit decision. They say it's a novel decision. It sort of resolved all the conflicts that were out there with respect to these rules. There's no conflicts with respect to these rules. As a matter of fact, the Federal Circuit said the conflict that the defendants here suggest simply does not exist. That's on page 1332 of the Federal Circuit ruling. And they then explain the differences between the rules with respect to filing a translation of the PCT, which is ex parte practice, and filing a translation in an interference, which is inter parte practice. There are two different rules, two different purposes. One is in the PCT, you have to file a translation because it's a requirement of the Paris Convention Treaty. All these countries that are part of that treaty have this requirement. With respect to the interference rules, you have to file a translation, plus it's got to be certified, whereas with the PCT it doesn't have to be certified. And you have to prove what's called a constructive reduction of practice using that certified translation in order to get the benefit of the earlier filing date. Constructive reduction of practice means simply that the disclosure of the claims you're trying to get in the U.S. application can be found in the PCT. So the Federal Circuit decision, so you just invoked it, can you get to statute of limits with respect to the Federal Circuit decision? Because the argument that could be made is that, well, then that would put everybody on notice. And in particular, talk about the Kratts appellees. The Kratts? The Kratts with respect to statute of limitations. So, yeah, with respect to the Federal Circuit, first of all, we don't think that the issue or the case be approved until the board ruled. And we have evidence that the Kratts and the Westerman defendants believe that also. For example, with respect to the Kratts defendants, we have a letter from Kratts. This is in 6.59 in the record. And it's a letter from Kratts to us. And one of the attorneys at the Kratts firm is James Armstrong. And he says the damage occurred, according to the insurance company letter, when the Federal Circuit denied rehearing on May 18th. That's when he is saying that the damage occurred, May 18th. Not when the Federal Circuit decision came down, but when the petition for rehearing came down. And the, or perhaps it was even October 18th, 2004, when the petition for certiorari was denied. So, Kratts is telling us that's when the action accrued. And the Westerman defendants, in a letter dated September 29, 2004, this is at 2242 in the record, says this to the insurance barrier. Just recently, on September 20, 2004, this is way within the period for being protected by the statute, the Patent Office issued a decision on the request to reopen the case of the Patent Office who were denied. We believe this denial could reasonably be expected to bring rise to a claim against our firm and our predecessors. That's Kratts. That's Kratts. So, both Kratts and Westerman took the same position as we did prior to the litigation as to when to claim accrued. Not exactly the same dates, but they're all well within the statute. Secondly, the Kratts, the Westerman lawyers sent us a letter saying, this is after, way after the Federal Circuit decision, saying you're still a winner. You're still a winner until the board rules. Because what happens in this interference is first you have ex-party prosecution before the Patent Office. Secondly, you have the interference. And the interference is sort of a two-step process. You have the interference, final decision, then you go to the Federal Circuit. And then you come back and you have some additional argument before the board. Now, our client was a winner up until the Federal Circuit ruled. But even after that, according to the board, it was still a winner until they finalized the decision. Until this absolutely final on September 14, 2004. I'd like to reserve a little time here. Okay. If I could. Sure. Thank you. May it please the Court. My name is Lance Robinson, and I represent the Westerman appellees. Before addressing the substantive malpractice issues, I wanted to quickly address the threshold issue that we raised in our motion to dismiss, which is whether Mr. Edward Kenahan and the Westerman law firm are appropriate parties to this appeal. The only cause of action against them in the amended complaint is count two, and the court below conceded that count two had no damage associated with it. So there is no remaining claim or controversy against Mr. Kenahan and the Westerman firm. So there's no basis to include them in the appeal. Unless there's any questions on that, I'd like to move to address the substantive malpractice claims. Your Honor, the authorities in 1997 were perfectly clear on whether a PCT application, the filing date was the filing date for all legal purposes. The issue is whether a U.S. national stage application, whether that entry date is the entry date, or whether the filing date for the U.S. national stage application is the filing date of the PCT application. And 35 U.S.C. 363 states, an international application designated to the United States shall, not may, shall have the effect from its international filing date under Article 11 of the treaty. The manual of patent examination procedures that interpreted what 35 U.S.C. 363 said explain further. That's stated differently since the international application, meaning a PCT application, is not an earlier application. It has the same filing date as a national stage. A priority claim in the national stage to the international application is inappropriate. Paragraph B of that same MPEP section states, an international application designated to the U.S. has two stages, international and national, with the filing date being the same in both stages. Later on it says, for all legal purposes, the filing date referring to the U.S. national stage application is the PCT international filing date. All of the authorities available in 1997 plainly stated that the filing date of the PCT application was the filing date of the U.S. national stage application for all legal purposes. Nothing indicated that there was an exception for interferences. And on this appeal, Your Honor, they bargained. What do you do with the Federal Circuit decision's description? The Federal Circuit decision? Well, that's in 2004, Your Honor. And so in 1997, the same. I understand, but they're looking back at the rules and talking about them. Correct, Your Honor. And I'm not sure how the Federal Circuit got to there, because in order to get there, you have to interpret child has really meaning may, and you have to carve out an exception for interferences that's simply not there. And what's further supported by that, Your Honor, is the interference regulations themselves. And in 37 CFR 1.601H, that's the interference regulation that defines what filing date means. And that says that in the case of an application, filing date means the filing date assigned to the application. So what the interference rule is saying is you've got to look at what the filing date that's assigned to the application is, and what all the other authorities that I just read all explain what the filing date that's assigned to the application should be. So when the Board issued its opinion, there was some back and forth between Westerman and the client to the effect that we ought to get this reconsidered? Yes, Your Honor, and more. If everything was so clear as you're suggesting, then what was the impetus behind needing to get it reconsidered? What drove the reconsideration is that the Board's decision, it denied them the filing date of the PCT application, but granted them the filing date of the Japanese patent application, and there was more than one year of space between the Japanese patent application and the U.S. national stage. And so there was concern that the Board's ruling would break the changes. Yeah, you knew you were in trouble with that, right? Correct. The clients were troubled by that, and that's what led to the motion for reconsideration. They were trying to correct this issue about not receiving the filing date of the PCT application. And, Your Honor, to further address your point about if this was so clear, I mean, the MPEG rules, the manual of patent examination procedures talk about this confusion between the filing date and the entry date. And it's a confusing issue because in some sense they are two separate applications, but what the rules say is that it is legally considered one application with one filing date. And in 2004, the Federal Circuit, that's the first time that the Federal Circuit has squarely addressed this issue. Before that, if you're looking at the authorities available in 1997, there's simply no indication that an interference that the Board had any discretion in using a different filing date other than the filing date of the PCT application. So the manual that you're referring to, it has an entry about interferences. That's correct, Your Honor. And under that one, doesn't it say that you're supposed to file the translation? Not for international applications, no, Your Honor. Those provisions do not address PCT applications. When the Federal Circuit finally does confront it, though, they do say that the rules are clear. They do, Your Honor, and that's the first time. And with all due respect to the Federal Circuit, I guess the point there, and maybe I've got to think through this, but the point is when they see it and they say it's very clear, and you have arguments about, well, it wasn't so clear, all this suggests to me that it's not a summary judgment case. Well, Your Honor, I think it is summary judgment because there was, you've got the rules on, talking about what was reasonable to be done in terms of filing the translation given the standard of care, et cetera, and that's usually a jury issue. It would suggest, okay, there's on the one hand you have these rules which were deemed by another court to be clear, could be read. On the other hand, you have the things you're pointing out, the manual. Let that be sorted out by the jury. Your Honor, before the Federal Circuit's decision in 2004, there's simply nothing in 1997 which would indicate that the Federal Circuit would come out that way. If you're looking at the plain language of the rules. The rules themselves, from the Federal Circuit's perspective, would have so indicated. And the Federal Circuit's that language on there about being clear, and that's dicta. They weren't addressing, you know, are they clear for malpractice purposes. But again, how does the Federal Circuit get there? And if you've got a rule that says that the filing date shall have effect, the Federal Circuit has to say, well, that really means may. And if you're looking at the MTE provisions, it says for all legal purposes, not for all legal purposes except for interferences. There's simply nothing in 1997 that a reasonable attorney could look at and say, wow, I've got to take these extra steps to be entitled to the filing date of the PCT application. And part of the reason for that, Your Honor, is that the U.S. entry, the 183 application, that is an English translation of the PCT application. They've already filed that. Right, but that's not the right one. I mean, that's the problem. That is the right one. I mean, it's not the right proceeding. Your Honor, the PCT. I mean, that's the whole case, right? In the interference, though, they are looking at the 183 application. I mean, eight pages of the 2002 board decision is spent discussing the 183 application, which is an English translation of the PCT application. I mean, what they're really saying, what the Federal Circuit really held for the first time, is that, no, you've got to supply a second English translation of a PCT application, even though they've already filed one and even though the PTO has already accepted that, Your Honor. How do you know if you don't, that the PCT application is the same as the 183? That's in the, when they filed the 183 application, they had to certify that this was an English translation of the PCT application. When they filed the 183? When they filed the 183 application in the U.S. Because that is what, when you've got a PCT application that designates the United States, when you file that national stage, it has to be an English translation of the PCT application. Uh-huh, I see. And so, Your Honor, because C can't point to any evidence in 1997, which suggests that a reasonable attorney would think that the filing date of the PCT application was not the filing date, there's simply, there's no, what would a jury be looking at in 1997? There's no other authority for them to consider in 1997, which would indicate an opposite result. The first and only indications that we have that PCT application's filing date is not the filing date is the Board decision in 2002 and the Federal Circuit's decision in 2004. But the rules themselves, right? The rules themselves, 1.637 and 1.647 apply to an earlier filed application, and what the MTEP provisions and 35 U.S.C. 363 explain is that these are not two different applications. These are two stages of a single application. So there would be no reason to think that 1.637 and 1.647 apply to that. And, Your Honor, this also gets back to the- I thought in your own filings you characterized the PCT application as an earlier filed application, which seemed to come within the crosshairs of the rule. They did refer to that as an earlier filed application in the motion, and the motion doesn't cite to the MTEP provisions and 35 U.S.C. 363 that we're talking about. But what that motion demonstrates, though, is that they're aware of the rule. Because, remember, in that motion they provide a certified English translation of the Japanese patent application, and in the very same motion they don't provide a certified English translation of the PCT application. That is, by definition, an exercise of professional judgment. This is not a case of neglect, error, we didn't know about the rule. They knew about the rule, and they thought that it didn't apply to PCT applications. And that decision was perfectly consistent with the authorities as they existed in 1997. I seem about to run out of time. If I could quickly address the- Yeah, please do. We'll give you time. Continuous representation issue. So what the issue here is whether the continuous representation rule applies to appeals. And the case in RDH v. Winson doesn't directly address the issue, but there's a remand there. And the remand is difficult. You can't explain it unless the court had decided that the continuous representation rule doesn't apply to appeal. The dates there are the appeal terminated in March of 1994, and the parties filed the complaint in August of 1995. Just on the policy of the whole thing, wouldn't it make sense to, if you have a continuous representation rule, to extend it through appeals on the theory that maybe you're going to win on appeal, maybe the thing you're concerned about gets corrected on appeal? I don't think you've got the same policy considerations because appeals do represent a natural pause in litigation. And unlike in the middle of discovery or the middle of trial, it's easier to obtain different counsel. And on the flip side of the policy issues, you've got a case like this where you're dealing with a malpractice that allegedly occurred in 1997. We've had law firms no longer exist that were initially involved. Two of the key witnesses in this case have died. Memories have faded. They were deposed 16 years after it occurred and said, well, we can't remember exactly what we did back in 1997. And now CEDA is claiming, well, that lack of evidence, that's proof of guilt. That is incredibly unfair to have to deal with these claims that are brought that deal with events that occurred that long ago. And that's exactly why statute of limitations exists. And that doesn't really go. Well, the continuous representation rule, though, doesn't really affect all the period of time you're talking about. No, you're right, but it shows that it's possible what happens. And even if you're dealing with a lesser time period, that's still a very long time period because appeals, in terms of appeals, can take much longer than the parties anticipate. I mean, it sounds like what you're saying is it ought to end at some point. Appeals is like a handy point to end it. But it doesn't really address, which may be true as a countering matter, but it doesn't address the justifications for the continuous representation rule to begin with, which seem equally applicable to counsel who continues to represent somebody on appeal. Nothing's changed in the dynamic between the client and the counsel that would cause one to think, well, there's a breaking point at the point in time at which the appeal is taking place. I think there is more of a breaking point when it comes to appeals than it is if you're in the middle of litigation or in the middle of trial. I think it's much more common for parties to retain new counsel. And in this case, Your Honor, they actually went with a different law firm. It may be true that it's more natural to switch counsel on appeal, but I guess the continuous representation rule doesn't seem to rest on the question of how easy would it be to switch counsel. That doesn't seem to be the driving policy behind the rule. No, Your Honor. It's a policy of kind of forcing a client. Do I sue my lawyer now or do I wait until the litigation process is further along? And, again, I think that the trials there, it's a more natural breaking point. And the counterbalance is just that appeals have the potential to last so long. Right. It could go longer than three years, certainly. Go much longer than three years, Your Honor. Of course, in this case, then it continues on after the appeal, as often happens. And, you know, one of the problems with cutting the line or drawing the line is that you're forcing a decision to sue the lawyer before everything's transpired that may have caused you not to sue the lawyer. That's true, Your Honor, but that's not always going to be true because you have to show that there's some damages. And so in this case, we've got attorney's fees because of a motion for reconsideration. And so that's the triggering point of the statute of limitations here. But in a lot of cases, though, Your Honor, I don't think that you're going to have those damages earlier on in the case. And so it may not be triggered until the conclusion of the appeal and the client actually has real damages. So that's true, but I want to qualify that a little bit because there could be situations where it's different. Okay. Thank you. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. Peter Gloss for the Kratz appellees, who are a group of law firms that have a pretty unique spot in this appeal and in the underlying case before the district court, in that the only reason that we are here is by virtue of the fact that Kratz defendants practiced in the same law firm as the Westerman defendants until October 1, 2003, when the Westerman defendants left to form their own law firm and the appellant, C, affirmatively discharged Kratz's counsel and transferred everything with the underlying patent and interference proceeding to the new Westerman firm. The significance of the firm split was recognized by Judge Urbina back in 2012 on his opinion with regard to the motion to dismiss when he found that, I believe I quote, the Kratz defendants are not accountable for those actions taken by the Westerman firm after the Westerman firm took over the C's representation. Now that's dealing with a little bit different issue than specifically before this court. The issue before this court is that the statute of limitations bars all claims prior to October, for actions, excuse me, prior to October 1, 2003 against the Kratz defendants. And this is for two reasons. First, under the discovery rule as recognized here in the District of Columbia, which is the triggering point for the accrual of the statute of limitations, C was on notice of this claim, on inquiry notice of this claim, on April 4, 2003, at which time they sent a fax to the defendants who still practiced in the same firm at this time. In response to the denial of the request for reconsideration on the date regarding BCT 947, where they stated their understanding that the request was denied because of a, quote, unquote, procedural mistake of not filing the English language translation. And that is the exact act of malpractice that is allegedly at issue in this case. At that point, they've suffered damages in the form of attorneys' fees. They've acknowledged the cause of the denial of the request and the loss of BCT 947. And they've stated their understanding that it was an act of a mistake of their own counsel. I think that Mr. Michael John, arguing for C, had stated that the accrual period shouldn't have started until as late as about 2006, when this was all over. He kind of states that accrual should be a subjective standard as to when the client has a full appreciation for the damages. And that's just not consistent with any D.C. case law from the Court of Appeals for the District of Columbia or this court or even the district court in the District of Columbia. No case has ever held that. And the courts continuously reject that argument. You don't have to go back to October 2003 because, as I understand it, because if the inquiry notice was supplied by the Federal Circuit's decision in May 2004. Oh, correct, Your Honor. Yes, no, you can find other crystal clear dates where the statute of limitations would begin to run. Now, I think that the May 2004 date would set a bad precedent. Although it would be correct, it would set a bad precedent because they were also on notice considerably earlier than that. But I would agree with you that the issuance of the Federal Circuit Appeal, without question, started running statute of limitations, which is also more than three years before the effective date of the complaint against the press defendants, which is May 10, 2007, under the tolling agreement with the press defendants. Now, on the continuous representation rule, we've talked a little bit between both lawyers who have already argued that whether it starts to, whether it ceases to have any effect on appeal. And to the extent it does continue after the original board decision denying the filing date of PCT 947, which started the appellate process and the underlying interference, it cannot apply to the press defendants after October of 2003. And this is because they were already on notice under the inquiry notice standard of this malpractice plan by the time they discharged. What if they hadn't been? If they had not been, then we can look at the May 4, 2004 date. And I think that the issue of whether it terminates, the continuous representation rule terminates on appeal, becomes more important there. And it certainly should terminate on appeal as to a formal offer. You have the Federal Circuit decision, and you do have some subsequent action by now the Westerman firm going to the Supreme Court where a cert was denied, asking for reconsideration. But when you have all of these facts, I don't know if you have to come to a hard and fast rule as to when the continuous representation rule ceases. But in this case, it must cease for the prior law firm, who first of all had the lawyers who were left in the prior law firm had no involvement in this underlying patent and interference proceedings in the first instance. And then you get to May 4, 2004 when the Federal Circuit comes down. You have to start running the statute of limitations period eventually. And it would be extraordinarily inequitable to hold a former law firm liable for years and years and years and years after the attorneys handling the case leave. Attorneys leave law firms all the time these days. And it would create exceptional difficulty in determining how long you're going to be liable for something that the leaving attorney, the allegedly negligent attorney did once they leave the law firm. It would affect practice premiums. It would affect coverage because there's real arguments as to when you have to give notice to your malpractice carrier of a potential claim. And they may deny coverage. So I think if there's any date for the continuous representation rule to cease to have any effect, it would be the October 2003 split, but then again in May of 2004. And I would just like to point the court to the analysis of the Supreme Court of West Virginia in Dundee-Rockwell, which we cite to in our brief. And that was a fact pattern that's pretty similar to the fact pattern here. The D.C. Court of Appeals hasn't necessarily addressed this exact fact pattern with regard to former law firms. But the West Virginia Supreme Court in Dundee-Rockwell found that when a client was on inquiry notice under their discovery rule of a possible malpractice claim, prior to the point where that negligent attorney left the law firm, they quote-unquote crippled the claim against the former law firm because the statute of limitations started running when the attorneys left and took the client with them at that point. It can be a harsh result, but as Mr. Michael Chong pointed out, I think I quote him, lots of rules are brutal. The statute of limitations can be brutal. And we have to make policy decisions. I think by that you're saying that the statute begins running when you leave the firm? Is that what you're saying? I think it would be dependent on the facts of the situation. Under the facts of this case, when the client is on inquiry notice of their possible malpractice claim, prior to the time where the allegedly negligent attorney leaves the firm, and despite that fact, the client still discharges the old law firm and goes with the new law firm, yes, certainly, that the statute of limitations started to run at that point. A different fact pattern may have a different result. But certainly under the facts of this case, I think that's the appropriate analysis. If the court doesn't have any further questions, I'll yield to my colleague for rebuttal. Thank you. Thank you, Your Honor. Just a couple points. Your Honor asked whether the PCT translation has to be certified, and my colleague said yes. But in the Federal Circuit decision, Stephen's case, it says at page 1334, as the board pointed out, however, section 371, that's the PCT section, does not require an affidavit attesting to the accuracy of the translation, while Rule 647 does. Again, that's the distinction between the two. For PCT purposes, it's just a formality. For the interference purposes, it's essential, because the defendants below had the burden of proving that the invention in the later application was disclosed in the earlier one. You could have a first and final application in Japan talking about a method of baking a cake, and then file a PCT off of it and say directed to making it pharmaceutical. First of all, if it's in Japanese, you can't read it. Secondly, if you've got a translation but it's a wrong translation, it just can't work. These are procedural rules of the Interference Board, which they have plenary authority to make these rules and they've been sustained. Second point with respect to the MPEP, your Honor mentioned that is there anything in there that says that the Rule 637 doesn't apply to PCT applications? The answer is no. First of all, the MPEP doesn't have the force of law. There's many cases that say that, no contradictory cases. Secondly, if you look at the... I don't think that helps you in this context, but go on to the next. If you look at the way ex parte and inter parte proceedings are carried out in the Patent Office, first of all, the statutes that apply to each are in different chapters of 35 U.S. Code. Secondly, the regulations are in different chapters of 37 CFR, and in the MPE they're in different sections of the different chapters of the MPEP. Even in the Patent Office, physically, you've got an ex parte section and you've got inter parte sections for interferences. The... We make much of this decision inquiry notice on 03. It doesn't make any sense to me because at that time we won. We won the case. If we try to file a lawsuit the next day after... We're not filing the translation. If we try to file a lawsuit the next day, we couldn't do it. We won. They granted priority to our plan, mistakenly, and the Federal Circuit fixed that up. Now, at that point, I don't think we could either because under Wagner, it says when a mistake is made in litigation, you have to wait until the litigation ends to see whether it's resolved or not. Sometimes you might make a mistake. For example, in Wagner, the plaintiff thought that his lawyer did a terrible job in discovery of a $10 million case. They took the deposition of lawyers for about an hour, made other kind of screw ups in litigation, but they have to wait until the decision is actually rendered because there might be something else that fixes up that issue so that you eventually win the case. With respect to the continuous representation rule, clearly the DeMai case holds that it applies through appeal, actually through the entire representation. I think the one issue we have here is whether it goes back. Does it go back to the Kratz firm or does it just apply to the Westermann firm,  The case law, as I can see, is unanimous that it does go back. There's one case where the court holds differently, but there's no explanation, no discussion of the authorities. That's the West Virginia case. It's called Dunn. I forgot what the last name is. But the policies underlying the continuous representation rule are the same, whether it's the firm that the lawyer is now in or the firm that he was in when he committed the malpractice. What are the policies? The policies don't interfere with the attorney-client relationship. There's obviously going to be some breaker when you start suing the attorney. And even in the earlier firm, if we were to sue Kratz at the time, Westermann was still representing them in the underlying litigation. Kratz could bring in Westermann into that case for a contribution or any other reason. So don't interfere with the relationship. In malpractice, you waive the privilege with respect to a lot of stuff. And the client's put in a tough position. So there's a lot of cases in New York. Particularly, we have four of them in our brief, which goes through those policies and says there's no reason why the continuous representation rule shouldn't go backwards. So every case I've seen is consistent with that, except that one, Dunn, where there's no explanation. Thank you. Thank you. Case is submitted.
judges: Henderson, Kavanaugh, Srinivasan